UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MUSTAFA NUR,

    Plaintiff,

    v.

WILLIAM HYATTE, et al.,

    Defendants.

CAUSE NO. 3:23-CV-512-JD-JEM

## OPINION AND ORDER

Mustafa Nur, a prisoner without a lawyer, filed a second amended complaint under 42 U.S.C. § 1983. (ECF 33.) This pleading supersedes his first amended complaint and controls the case from this point forward. *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009). As required by 28 U.S.C. § 1915A, the court must screen his pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Nur is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Nur is currently an inmate at Branchville Correctional Facility. His claims stem from an incident occurring at Miami Correctional Facility. He claims that on August 12, 2020, he was working at the prison's "Shoeshine Station" when Investigator Montrel McGee of the internal affairs department came to get his shoes shined. While Investigator McGee was there, another inmate dropped off a bag of clean rags. When Mr. Nur left the room, Investigator McGee looked in the bag and found cell phones and tobacco. He asked Mr. Nur about it but Mr. Nur denied knowing anything about what was inside the bag. A search of Mr. Nur's cell was subsequently conducted and Investigator McGee claimed to have found a cell phone under Mr. Nur's mattress. Based on these events, Mr. Nur was charged with trafficking and possession of a cell phone in violation of the Indiana Department of Correction (IDOC) Disciplinary Code.

During the course of the investigation, he spent 60 days in administrative segregation. He claims the conditions there were very poor. In addition to being isolated in his cell almost 24 hours a day, he was in near-total darkness due to the fact that the light was broken and the only window was covered with a metal sheet. There was broken glass on the floor from the light and the walls, floor, and bedding were smeared with another inmate's feces. He claims that these conditions caused him physical injury, as he often tripped over his bed and toilet because he could not see, as well as psychological trauma in that he began to "hallucinate that there were bugs crawling on his skin and blanket."

At a disciplinary hearing conducted by Officer Angel Goodridge in early October 2020, he was found guilty of both offenses and sanctioned with the loss of earned-credit

2

time. At that point he was transferred to a different cell. He claims Officer Goodridge violated his due process rights by refusing to let him call Investigator McGee as a witness, failing to review the video evidence as he requested, and finding him guilty despite the lack of evidence that he had any knowledge of what was inside the bag. He appealed through administrative channels, and his appeal was granted as to the cell phone possession charge but denied as to the trafficking charge.

He then filed a federal habeas corpus petition asserting due process violations. *Nur v. Warden*, 3:21-CV-340-DRL-MGG (N.D. Ind. closed Oct. 27, 2021). While that case was pending, he was granted a new hearing on the trafficking charge. The charge was reheard by a different hearing officer and he was again found guilty. He appealed, and Warden William Hyatte agreed that there was insufficient evidence to prove he knew what was inside the laundry bag. In January 2022, the Warden granted his appeal and vacated the guilty finding. Based on these events, Mr. Nur sues Warden Hyatte, Investigator McGee, and Officer Goodridge.

He first asserts that his rights were violated under the Eighth Amendment because of the conditions he endured in the segregation unit. However, public records reflect that he is already pursuing an Eighth Amendment claim in another lawsuit pertaining to the conditions in the segregation unit during that period. *See Nur v. Warden, et al.*, No. 3:21-CV-764-HAB-MGG (N.D. Ind. filed Oct. 12, 2021). He is represented by counsel in that case and claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment because of the near total darkness, feces, and broken glass in his cell in the segregation unit during August and

3

October 2020. *Id.*, ECF 1 at 1. He cannot use the in forma pauperis statute to file lawsuits containing duplicative claims.[1] *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (federal suit may be dismissed when it duplicates claims in another pending lawsuit). His Eighth Amendment claim will be dismissed without prejudice to his pursuit of this claim in the other pending case.

He also claims a violation of due process in connection with the disciplinary proceeding. Under the Fourteenth Amendment, due process protections are only required when a liberty interest is at stake. *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995). The loss of earned-credit time triggers due process protections, but Mr. Nur makes clear that the guilty finding was ultimately vacated on appeal, such that his sentence was not lengthened because of these events. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000).

He also spent 60 days in administrative segregation while the charges were pending. A transfer to segregation will trigger a protected liberty interest only if it amounts to a significant and atypical hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 476. When an inmate is transferred to segregation, "his

---

[1] It appears he wants to sue additional defendants that are not currently named in the other case, but it is not appropriate for him to "split" his claims arising out of this incident, nor does it promote judicial economy to allow him to proceed in this manner *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 688, 696 (7th Cir. 2022); *Chi. Title Land Tr. Co. v. Potash Corp. of Sask. Sales Ltd.*, 664 F.3d 1075, 1081 (7th Cir. 2011). There is an additional problem with pursuing the claim in this case: His original complaint was not filed until June 2023, more than two years after the date he was allegedly subjected to these conditions, which would be outside the applicable statute of limitations. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).

4

liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013); *see also White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021) (inmates have a protected liberty interest in avoiding transfers within the prison that "substantially worsen the conditions of confinement"). There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead the court must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019); *see also Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015) (term of segregation "considerably shorter" than six months can trigger a liberty interest "depending on the conditions of confinement").

      Mr. Nur did not serve a particularly lengthy period in the segregation unit, but he describes conditions there that were extreme. He claims to have been housed in a cell surrounded by another inmate's fecal matter and broken glass, neither of which he could see to avoid. He was isolated in this cell by himself at all times, other than a few hours a week when he took a shower or was allowed to exercise. He further claims the conditions were so severe that they caused him physical injury and a psychological breakdown. Giving him the inferences to which he is entitled, he has plausibly alleged that the conditions were "unique to . . . the segregation unit" and that they caused him a significant hardship. *Lisle*, 933 F.3d at 721.

      He further alleges that Officer Goodridge denied him exculpatory evidence and found him guilty at the disciplinary hearing despite the lack of evidence, which, if true,

5

would violate his due process rights. *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). He also claims that Investigator McGee fabricated evidence and colluded with Officer Goodridge to find him guilty, denying him his right to an impartial decisionmaker, and that Warden Hyatte refused to grant his appeals until after the second hearing, even though there were obvious due process violations that had occurred. He will be permitted to proceed past the pleading stage on a Fourteenth Amendment claim against these defendants.[2]

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against William Hyatte, Montrel McGee, and Angel Goodridge in their personal capacity for money damages for denying him due process in violation of the Fourteenth Amendment in connection with the disciplinary proceeding initiated on August 12, 2020;

(2) DISMISSES the plaintiff's Eighth Amendment claim WITHOUT PREJUDICE as outlined;

(3) DISMISSES all other claims; and

(4) ORDERS William Hyatte, Montrel McGee, and Angel Goodridge to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

---

[2] His pleading mentions others who were involved in these events, but he does not name them as defendants. He clearly states that he is only suing the three defendants referenced in this order, and so the court does not address any potential claims against other individuals. (*See* ECF 33 at 1, 3.)

SO ORDERED on March 5, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT